# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2021AP1076

†Petition for review filed

Complete Title of Case:

**WAUPACA COUNTY,**

      **PLAINTIFF-RESPONDENT,**

    **V.**

**DEANN R. GOLLA AND DAWN M. ZEINERT,**

    **DEFENDANTS-APPELLANTS. †**

| | |
|---|---|
| Opinion Filed: | June 23, 2022 |
| Oral Argument: | April 25, 2022 |

| | |
|---|---|
| JUDGES: | Kloppenburg, Fitzpatrick, and Graham, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendants-appellants, the cause was submitted on the briefs of and oral argument by *Michael P. Van Kleunen* of *Axley Brynelson, LLP*, Waukesha. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Diane Meulemans* and *Tiffany R. Wunderlin*, of *Waupaca County Corporation Counsel*, Waupaca. There was oral argument by *Andrew T. Phillips*. |

# COURT OF APPEALS DECISION DATED AND FILED

## June 23, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1076**

STATE OF WISCONSIN

Cir. Ct. No. **2016CV214**

IN COURT OF APPEALS

---

WAUPACA COUNTY,

    PLAINTIFF-RESPONDENT,

V.

DEANN R. GOLLA AND DAWN M. ZEINERT,

    DEFENDANTS-APPELLANTS.

---

APPEAL from an order of the circuit court for Waupaca County: TROY NIELSEN, Judge. *Affirmed*.

Before Kloppenburg, Fitzpatrick, and Graham, JJ.

¶1 KLOPPENBURG, J. Sisters DeAnn R. Golla and Dawn Zeinert challenge the authority of Waupaca County ("the County") to enforce provisions in the County's General Zoning Ordinance as to the construction of an addition to an

existing structure on their shoreland property.[1]  Specifically, Golla argues that the side yard setback and land use permit provisions that apply to structural alterations on any property in the County do not apply to the addition on her property.  The circuit court rejected Golla's challenge, determining first that a 1988 side yard setback variance (generally, "the 1988 variance") that allowed the construction of the existing structure on Golla's property does not exempt Golla from the need to obtain a variance from the side yard setback for the addition.  Addressing a new argument raised by Golla on a second motion for reconsideration, the court also determined that the shoreland zoning statute, WIS. STAT. § 59.692 (2019-20),[2] does not prohibit the County from enforcing its General Zoning Ordinance provisions imposing a side yard setback and requiring a land use permit as to the addition.

¶2     Accordingly, the circuit court granted partial summary judgment to the County, determining that it was undisputed that Golla constructed the addition without applying for and obtaining a side yard setback variance or a land use permit from the County in violation of the General Zoning Ordinance side yard setback and land use permit provisions.  At the conclusion of a remedies hearing, the court rejected Golla's argument that the County's failure to follow the razing statute, WIS. STAT. § 66.0413, barred injunctive relief.  The court then considered the applicable

---

[1]  Following the lead of the parties, we refer to the County Zoning Ordinance that applies to all property in the County as the "County General Zoning Ordinance" or "General Zoning Ordinance," to distinguish it from the "County Shoreland Zoning Ordinance" or "Shoreland Zoning Ordinance" that applies only to property in the shoreland.

Also following the lead of the parties, we will refer both to DeAnn R. Golla and Dawn Zeinert collectively, and to DeAnn R. Golla individually, as "Golla."

[2]  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.  Any amendments to WIS. STAT. § 59.692 since the addition was constructed in 2016 have not changed the language at issue in this appeal.

factors for injunctive relief for a zoning violation, including the extensive nature of the violation and that Golla had been "put on notice time and time again both orally and in writing of the County's position" that construction of the addition could not proceed without a side yard setback variance and a land use permit. The court granted the County's request for injunctive relief and ordered removal of the addition.[3]

¶3 On appeal, Golla seeks reversal of the circuit court's decisions denying her second motion for reconsideration and granting the County's request for injunctive relief. Regarding the court's denial of her second motion for reconsideration, Golla argues that she is entitled to summary judgment dismissing this action because WIS. STAT. § 59.692 prohibits the County from enforcing the side yard setback and land use permit provisions in its General Zoning Ordinance as to the addition on her shoreland property. The County responds that the 1988 variance that allowed construction of the original structure that encroaches on the side yard setback does not allow construction of the 2016 addition that also encroaches on the side yard setback without a new variance in connection with a land use permit. Additionally, the County argues that § 59.692 does not prohibit the County from enforcing the side yard setback and land use permit provisions in its General Zoning Ordinance as to the addition.

¶4 We conclude that Golla was required to obtain a variance for the addition because the 1988 variance does not exempt Golla from compliance with the side yard setback and land use permit provisions in the General Zoning Ordinance as to construction of the addition. We reach this conclusion based on the

---

[3] The parties stipulated to, and the circuit court ordered, a stay of the court's order pending appeal.

unambiguous language in the 1988 variance and Golla's failure to develop an argument based on that language or supporting legal authority to the contrary. We also conclude that WIS. STAT. § 59.692 does not bar the County from enforcing the side yard setback and land use permit provisions in its General Zoning Ordinance, which apply to structural alterations on all property in the County, as to the construction of the addition on Golla's shoreland property. We reach this conclusion based on the statutory language, interpreted in relation to the statute's scope, purpose, and context, the language of related statutes, and statutory history. Because it is undisputed that Golla did not obtain a side yard setback variance or land use permit before constructing the addition, the circuit court properly granted partial summary judgment to the County on the violations alleged in the complaint.

¶5     As to the circuit court's decision granting the County's request for injunctive relief, Golla argues that the court erroneously exercised its discretion in granting injunctive relief in two respects:  (1) injunctive relief is barred because the requirements in WIS. STAT. § 66.0413, which authorizes counties to order a property owner to raze a building, were not met; and, alternatively, (2) the court failed to properly analyze the factors that apply to injunctive relief for a zoning violation. Based on a plain meaning interpretation of the language of § 66.0413 and case law explaining what injunctive relief is available under WIS. STAT. § 59.69(11), which authorizes counties to enforce zoning ordinances "by injunctional order," we conclude that the statutory razing requirements do not limit or otherwise affect the circuit court's authority to grant injunctive relief under § 59.69(11), as requested by the County. Based on our review of the record, which includes the court's detailed and comprehensive consideration of the applicable factors, we conclude that the court properly exercised its discretion.

¶6     Accordingly, we affirm the order of the circuit court.

## BACKGROUND

¶7      The following undisputed facts, taken from the stipulated facts filed with the circuit court and testimony by Golla and the County Zoning Administrator at the remedies hearing, provide necessary context for the issues raised on appeal.[4]

¶8      Golla owns property located on Dake Lake in the Town of Dayton, Waupaca County.  The property is located in a "sewered residential" area under the County General Zoning Ordinance, Chapter 34, Section 3.09.[5]  The property is also located in the shoreland under the County Shoreland Zoning Ordinance, Chapter 32.

¶9      In 1988, Golla's father, who then owned the property, obtained a variance to build a residence on the property which is smaller than the applicable minimum lot size under the County General Zoning Ordinance.  The 1988 variance also permitted placement of the residence within the shoreland setback under the Shoreland Zoning Ordinance, and within the applicable side yard setback under the General Zoning Ordinance.  The 1988 variance contained certain conditions, including a five-foot side yard setback and that a "[l]and use permit must be issued

---

[4] On appeal, a party must include appropriate factual references to the record in its briefing. WIS. STAT. RULE 809.19(1)(d)-(e).  The vast majority of Golla's citations in support of her factual assertions are instead to her appendix.  The appendix is not the record. *United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322.  Additionally, the County at times does not include pin cites within its citations to the record, which requires that we search the document cited.  The confusion and additional complexity caused by these deficiencies were apparent during the record-intensive discussions at oral argument.  We warn Golla and the County that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

[5] WAUPACA COUNTY, WIS., GENERAL ZONING ORDINANCE, Ch. 32, § 3.09 (2020).  All citations to provisions of the County General Zoning Ordinance and the County Shoreland Zoning Ordinance are to the versions of the provisions filed by Golla with the circuit court in October 2020 or cited in the stipulated facts, unless otherwise noted.  The parties do not expressly indicate whether the versions of the specific provisions in the record were in effect at the time that Golla constructed the addition, but the parties do not contend that they were not.  Nor did the parties so contend at oral argument in response to questioning concerning the cited ordinance provisions.

PRIOR to start of construction." Golla's father submitted a land use permit application showing the project site plan, and built a one-story residence consistent with the application and the 1988 variance.

¶10 In the summer of 2015, Golla contacted the County Deputy Zoning Administrator about what County approval would be necessary for a second-story addition within the footprint of the existing residence. The Deputy Zoning Administrator told Golla that a land use permit was required and would not be issued without a side yard setback variance for the addition.

¶11 In August 2015, Golla applied to the Town of Dayton ("the Town") for a building permit for the addition, and the Town issued the building permit in April 2016. The Town building permit included the following condition: "Please consult with Waupaca County to determine if any type of L.U. [land use] permit is required. Issued based on recently passed legislation." By signing the permit, Golla certified that she understood that she was "subject to any conditions of this permit." The permit also stated: "Failure to comply may result in suspension or revocation of this permit or other penalty."

¶12 Golla did not consult with the County about whether a land use permit was required after receiving the Town building permit, nor did she ever apply for a County land use permit for construction of the addition. Golla also never applied for a variance from the side yard setback for the addition

¶13 Between the time of her contact with the County in the summer of 2015 and the Town's issuance of the building permit in April 2016, Golla spoke several times with a State Representative. Golla understood from her conversations

6

with the Representative that no County land use permit was necessary for construction of the addition because of a new law that had recently been enacted.[6]

¶14    On May 13, 2016, the County Planning and Zoning Office sent a letter to Golla advising her that she was required to obtain a land use permit for construction of the addition. The letter stated:

> It has come to our attention that you are considering an addition …. We are also aware that the state has revised the shoreland zoning laws applicable to your property so as not to require you to obtain a land use permit for certain structural alterations under Waupaca County's Shore[land] zoning ordinance …. The purpose of this letter is to advise you that the Waupaca County Planning and Zoning Office still requires a land use permit before any building or structure is erected, moved, or structurally altered under the [General] Zoning Ordinance, Chapter 34 Section 14.03(5). Failure to comply with the permitting requirements may result in after the fact fees and legal action against you and the property.

¶15    After receiving this letter, Golla spoke with the Town Building Inspector and the Representative, and she understood from those conversations that she was authorized under state law to continue with construction of the addition. Specifically, Golla was aware that the County required a County land use permit for construction of the addition, but, according to Golla, she was told by the Town Building Inspector and the Representative that no County land use permit was necessary under the newly enacted law.

¶16    On May 23, 2016, Golla began construction of the addition.

---

[6] It is evident from the briefing that the new law to which the State Representative was referring consisted of amendments to WIS. STAT. § 59.692, which we address in detail in the discussion section below. *See* 2015 Wis. Act 55 (creating § 59.692(1k)(a)4. and 59.692(5m)); 2015 Wis. Act 391 (amending § 59.692(1k)(a)4.).

¶17     On May 27, 2016, the County Planning and Zoning Department personally served a cease and desist letter on Golla, which stated:

> It has come to our attention that you have started a vertical expansion project … without first applying for and receiving the applicable land use permits as detailed in the letter sent to you on May 13th, 2016 ….  As previously indicated, the expansion implicates general County zoning standards that apply both within and outside the shoreland zone.
>
> This letter is being sent as a warning to cease and desist all actions related to the vertical expansion project in contravention of the County Zoning Ordinance.  Failure to do so by May 31st will result in this office filing a demand for prosecution with the County Corporation Counsel and appropriate enforcement officials pursuant to Sec. 14.07 of the County Zoning Ordinance.  Please refer to Sec. 14.07 of the County Zoning Ordinance for the remedies available to the County in the event you do not comply with this request.

¶18     Golla met with the Town Building Inspector and the Representative and showed them the cease and desist letter.  According to Golla, they told her that she had "nothing to worry about" under the new state law.  Golla continued with construction and completed the addition.

¶19     On June 8, 2016, the County Deputy Zoning Administrator issued a citation to Golla for failing to obtain a land use permit before commencing construction of the addition as required by the General Zoning Ordinance, Chapter 34, Section 14.03(5)(a).

¶20     On August 3, 2016, the County filed this action, alleging that Golla violated and was in continuing violation of the General Zoning Ordinance, Chapter 34, Section 14.03(5)(a), by failing to obtain a land use permit for construction of the addition.  The complaint also alleged that Golla violated and was in continuing violation of the General Zoning Ordinance, Chapter 34, Section 4, by

constructing an addition that encroaches on the side yard setback. The County sought injunctive relief and forfeitures for the alleged violations.

¶21 This action was consolidated with the citation action.

¶22 Golla filed a motion for partial summary judgment, and the parties filed a stipulation of undisputed facts along with briefs supporting and opposing the motion. The circuit court heard argument at a hearing in October 2019. At the conclusion of the hearing, the court determined that the undisputed facts established that Golla had violated both the land use permit and the side yard setback provisions in the County General Zoning Ordinance. The court focused on the legal effect of the 1988 variance and determined that it does not exempt Golla from compliance with the side yard setback regarding subsequent construction, "unless a [new] variance was sought and obtained."

¶23 In April 2020, Golla filed a motion to reconsider, arguing that the alleged land use permit violation was an irrelevant "procedural" issue because the addition complied with the County General Zoning Ordinance "as modified by" the 1988 variance. Therefore, according to Golla, the County erroneously informed her that a land use permit would be denied without a new variance. The County opposed the motion, asserting that there were two separate substantive issues before the circuit court: whether the 1988 variance permitted a new addition in 2016 and whether Golla completed the addition without a land use permit. The County noted that Golla conceded the second issue, and contended that Golla's arguments as to the first issue relied on inapposite case law and repeated arguments that the court had rejected. In an order dated June 25, 2020, the court denied Golla's motion for reconsideration, adopting the County's "rationale."

9

¶24 In October 2020, Golla filed a second motion for reconsideration, arguing for the first time that WIS. STAT. § 59.692, which addresses a county's shoreland zoning authority, bars the County from requiring that Golla obtain a land use permit or a side yard setback variance under its General Zoning Ordinance before constructing an addition on her shoreland property.

¶25 In January 2021, the circuit court held a hearing on Golla's second motion for reconsideration. After hearing the parties' arguments, the court determined that Golla failed to establish an error of law warranting reconsideration of the court's earlier decision granting partial summary judgment to the County. Specifically, the court determined that WIS. STAT. § 59.692 unambiguously does not bar the County from enforcing the side yard setback and land use permit provisions in its General Zoning Ordinance.

¶26 In February 2021, the circuit court held a remedies hearing at which Golla and the County Zoning Administrator (who had been the County Deputy Zoning Administrator when Golla contacted the County in 2015) testified. After hearing the testimony and the parties' arguments, the court first determined that the razing statute, WIS. STAT. § 66.0413, does not apply. The court then considered the applicable factors and granted the County's request for an injunction requiring that the residence be brought into compliance by removal of the addition. The court also denied the County's request for forfeitures. We will address the court's decision in detail in our analysis below.

¶27 In May 2021, the circuit court issued a written "Final Findings and Order" that reiterated its findings and rulings on partial summary judgment, the second motion for reconsideration, and remedies.

10

¶28 As to partial summary judgment, the circuit court reiterated that the 1988 variance applied only to the structure constructed pursuant to that variance and does not exempt either Golla's father or subsequent property owners "from having to comply with" the side yard setback that applies to "any subsequent changes" to the structure. The court also stated: "[Golla] ignored many steps …. [Golla] never applied for a land use permit or for a variance to vertically expand the residence. Had they done so and been denied they would have had multiple avenues of recourse but they chose not to engage with the County at all and proceeded with the addition[.]"

¶29 As to the second motion for reconsideration, the circuit court reiterated its determination that WIS. STAT. § 59.692 unambiguously does not bar the County from enforcing the side yard setback and land use permit provisions in its General Zoning Ordinance.

¶30 As to remedies, the circuit court reiterated its determination that WIS. STAT. § 66.0413 does not apply because the County sought to bring the property into compliance with the General Zoning Ordinance, not to raze the residence. The court then made detailed findings based on the factors applicable to the County's request for injunctive relief for Golla's zoning violations, consistent with its remarks at the conclusion of the remedies hearing. The court granted the County's request for injunctive relief and ordered that Golla "remove the structural alterations made in the year 2016." The court denied the County's additional request for forfeitures

11

and awarded no costs to the County. Golla appealed, and on the parties' stipulation the court stayed its order pending appeal.[7]

## DISCUSSION

¶31    We first address Golla's challenge to the circuit court's decisions granting partial summary judgment to the County on the County's claims that Golla violated the side yard setback and land use permit provisions of the General Zoning Ordinance and denying reconsideration on this issue. Because we affirm the circuit court's determination that Golla violated those General Zoning Ordinance provisions, we then address Golla's challenge to the court's decision granting the County's request for injunctive relief for those violations.

## I.  VIOLATION OF SIDE YARD SETBACK AND LAND USE PERMIT PROVISIONS

¶32    On appeal, Golla focuses on the issue raised in her second motion for reconsideration—the legal effect of WIS. STAT. § 59.692 on the County's enforcement of its General Zoning Ordinance side yard setback and land use permit provisions.  Specifically, Golla argues that § 59.692 prohibits the County's enforcement of its side yard setback and land use permit provisions as to the vertical addition of her residence. However, the County asserts that Golla would not have been required to obtain a land use permit if she did not need a variance from the side yard setback requirement. Thus, we need only reach Golla's § 59.692 argument if the 1988 variance does not exempt her from compliance with the side yard setback provision as to the 2016 addition.

_____

[7] After the parties completed their briefing of this appeal, this court ordered oral argument directing counsel to expand on their arguments with specific attention to the interpretation and application of certain statutes. We appreciate counsel's preparation and responsiveness on the topics discussed at oral argument.

12

¶33    Accordingly, we first address the legal effect of the 1988 variance to determine whether the County properly required a side yard setback variance as a condition of issuing a land use permit for the 2016 addition (the subject of the circuit court's rulings on summary judgment and Golla's first motion for reconsideration). Because we conclude that the County properly required Golla to obtain a side yard setback variance for the 2016 addition notwithstanding the 1988 variance, we then address the legal effect of WIS. STAT. § 59.692 to determine whether the County properly required a side yard setback variance and land use permit under that statute (the subject of the circuit court's ruling on Golla's second motion for reconsideration).

¶34    We review summary judgment de novo, using the same methodology as the circuit court. *R.W. Docks & Slips v. State*, 2001 WI 73, ¶12, 244 Wis. 2d 497, 628 N.W.2d 781. Summary judgment is proper if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *Id.*; WIS. STAT. § 802.08(2) (summary judgment to the moving party) and (6) (summary judgment to the non-moving party).

¶35    We review a circuit court's decision on a motion for reconsideration for an erroneous exercise of discretion. *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853. "To prevail on a motion for reconsideration, [a] movant must present either newly discovered evidence or establish a manifest error of law or fact." *Id.*, ¶44.

*A. Legal Effect of 1988 Variance*

¶36    As an initial matter, we note that Golla does not meaningfully address this issue with any legal analysis beyond the conclusory assertion in a footnote in

13

her initial appellant's brief that, "[n]othing in the 1988 Variance limited the use of the area variance to a single construction activity." In her reply brief, addressing the County's assertion in its response brief that she thereby waived any argument as to the effect of the 1988 variance on the 2016 addition, Golla merely states that, "nothing in the 1988 Variance limited the vertical addition." As we explain below, we agree, in that nothing in the 1988 variance "limits" or otherwise applies to the addition. If Golla means something different, she does not support her conclusory assertions with any examination of the actual language of the 1988 variance or with any citation to legal authority. Notably, Golla does not meaningfully develop any argument that the circuit court erred in its decisions initially granting partial summary judgment to the County and denying her first motion for reconsideration, based on the court's determination that the 1988 variance does not apply to the 2016 addition. We may treat Golla's failure to challenge the circuit court's rulings on the 1988 variance issue as a concession that the court's rulings on this issue were correct. *See West Capitol, Inc. v. Village of Sister Bay*, 2014 WI App 52, ¶49, 354 Wis. 2d 130, 848 N.W.2d 875 (explaining that "[f]ailure to address the grounds on which the circuit court ruled constitutes a concession of the ruling's validity.").

¶37    However, we choose to address the issue of the legal effect of the 1988 variance as to the 2016 addition because, as explained above, if the specific 1988 variance in this case also permits the 2016 addition then we need not reach the broader issue about the application of WIS. STAT. § 59.692. Moreover, the parties briefed, and the circuit court decided, the issue on summary judgment and on the first motion for reconsideration. We now explain why we conclude that the 1988 variance does not exempt Golla from compliance with the County General Zoning Ordinance side yard setback provision as to the 2016 addition.

¶38     WISCONSIN STAT. § 59.694(7)(c) allows a county board of adjustment to grant a variance from the terms of a county general zoning ordinance enacted pursuant to WIS. STAT. § 59.69, where a literal application of zoning regulations would result in unnecessary hardship.  *See* § 59.694(1) and (7)(a) (referencing the powers of a board of adjustment vis-à-vis a zoning ordinance enacted pursuant to § 59.69); sec. 59.69(1) and (4) (authorizing a county to enact a zoning ordinance applicable to all property within the county).  Specifically, a board of adjustment has the power:

> To authorize upon appeal in specific cases variances from the terms of the ordinance that will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

Sec. 59.694(7)(c)2.

¶39     "The burden of proving unnecessary hardship [is] on the property owner." *State ex rel. Ziervogel v. Washington Cnty. Bd. of Adjustment*, 2004 WI 23, ¶¶7, 33, 269 Wis. 2d 549, 676 N.W.2d 401.  The inquiry should focus on "the circumstances of each individual case," *id.*, ¶34, and whether the statutory standard of unnecessary hardship is met "depends upon a consideration of the purpose of the zoning restriction in question, its effect on the property, and the effect of a variance on the neighborhood and the larger public interest," *id.*, ¶¶7, 33.  In addition, the hardship must "be unique to the property and not self-created." *Id.*  "The power to grant a variance is an exceptional one and … should be sparingly exercised." *State v. Outagamie Cnty. Bd. of Adjustment*, 2001 WI 78, ¶50, 244 Wis. 2d 613, 628 N.W.2d 376 (quoted source omitted).

¶40     Side yard setback regulations "are intended to provide unoccupied space for several purposes, including to afford room [for] lawn and trees, to promote rest and recreation, to enhance the appearance of the neighborhood, and to provide access to light and air." *Snyder v. Waukesha Cnty. Zoning Bd. of Adjustment*, 74 Wis. 2d 468, 479, 247 N.W.2d 98 (1976).

¶41     Here, in 1988 Golla's father sought a variance "for the creation of 2 substandard size lots out of three existing lots, with less than required side[ ]yard and water setbacks." At the hearing before the County Board of Adjustment ("the Board"), Golla's father explained that he was proposing to put "a decent home" on the property rather than add to the existing cottage that was "falling down," and that none of his neighbors objected to the proposed construction. In response to questions about the relative sizes of the setbacks on either side of the proposed construction, Golla's father explained that the five-foot setback he was seeking on one side would maintain a sufficient setback on the other side if that lot "may come up for sale." The Board granted the 1988 variance for the creation of the two substandard lots and "for the construction of a dwelling with less than required side[]yard and water setbacks." The Board determined, "This would be a good use of the land in this particular residential area." The variance imposed several conditions, including preparation of a certified survey map "showing the distances as presented at the hearing," a five-foot side yard setback, and issuance of a land use permit before the start of construction.

¶42     The record of the Board's deliberations and decision indicates that the Board determined that:  (1) a five-foot side yard setback for the proposed one-story residence was appropriate in light of the purpose of the general zoning ordinance and the effect of the reduced setback on the neighborhood and the larger public interest at that time; and (2) any hardship was not self-created. However, the

16

Board's assessment of unnecessary hardship regarding construction of a *one-story* structure that encroached on the side yard setback in 1988 does not indicate how the Board would weigh the evidence regarding a *second-story* addition that encroaches on the side yard setback in 2016, especially in light of: (1) any changes in the pattern of construction in the area, the development of neighboring lots, or the larger public interest in 2016; (2) the purpose of the general zoning ordinance; and (3) whether the addition could be built without encroaching on the side yard setback. *See Roberts v. Manitowoc Cnty. Bd. of Adjustment*, 2006 WI App 169, ¶32, 295 Wis. 2d 522, 721 N.W.2d 499 (it is for the Board to weigh the evidence in a variance case).

¶43    We discern no language in the 1988 variance that would relieve Golla from her burden of proving, and the Board from determining, unnecessary hardship so as to warrant a side yard setback variance for new construction in "the circumstances" existing in 2016. *See **Ziervogel***, 269 Wis. 2d 549, ¶34; *see also **id.***, ¶33 (whether the property owner has proven unnecessary hardship in an individual case depends on consideration of the purpose of the zoning restriction, its effect on the property, and the effect of a variance on the neighborhood and larger public interest, and on whether the hardship has been self-created).

¶44    The 1988 variance protects all owners of this property from future efforts by the County to disturb any aspect of the structure that was legally built pursuant to that variance. *See **Goldberg v City of Milwaukee Zoning Appeals Bd.***, 115 Wis. 2d 517, 523-24, 340 N.W.2d 558 (Ct. App. 1983) (ruling that variance allowing use of building on property as a six-family dwelling accrued to subsequent owners, entitling them to continue to use the building as a six-family dwelling without needing to apply for a new variance). However, requiring a variance for the 2016 addition does not disturb any aspect of the structure that was legally built

pursuant to the 1988 variance. The 2016 variance requirement pertains only to the addition, and it applies to the addition because whether to grant a variance for the new construction that encroaches on the side yard setback is a fact-specific determination based on the circumstances existing at the time of the proposed construction. *See Ziervogel*, 269 Wis. 2d 549, ¶¶33-34.

¶45 In sum, based on its actual language, the 1988 variance permitted only the construction of the structure with a five-foot side yard setback for which that variance was granted, pursuant to a land use permit issued for that structure. The 1988 variance does not extend to subsequent construction of an addition to that structure that does not comply with the side yard setback provision of the General Zoning Ordinance. Accordingly, the County properly required that Golla obtain a side yard setback variance as a condition of issuing a land use permit for the 2016 addition, unless WIS. STAT. § 59.692 prohibits the County from enforcing the side yard setback and land use permit provisions, which leads to the next part of our analysis.

### B. Legal Effect of WIS. STAT. § 59.692

¶46 Golla argues that the circuit court misinterpreted certain statutory provisions when it denied her second motion for reconsideration, which raised for the first time an argument based on WIS. STAT. § 59.692. "The interpretation and application of statutes present questions of law that we review independently." *Brey v. State Farm Mut. Auto. Ins. Co.*, 2022 WI 7, ¶9, 400 Wis. 2d 417, 970 N.W.2d 1 (quoted source omitted).

¶47 "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681

N.W.2d 110. When interpreting a statute, Wisconsin courts begin with the statutory language. *Id.* The words used by the legislature are to be given their "common, ordinary, and accepted meaning." *Id.*, ¶45. In addition, statutory language must be interpreted "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46.

¶48 "Importantly, 'ascertaining the plain meaning of a statute requires more than focusing on a single sentence or portion thereof.'" *Brey*, 400 Wis. 2d 417, ¶11 (quoted source omitted). Courts must read the words in context and with a view to the place of those words in the overall statutory scheme. *Id.* ("oftentimes the meaning … of certain words or phrases may only become evident when placed in context, so when deciding whether language is plain, courts must read the words in their context and with a view to their place in the overall statutory scheme" (internal quotation marks and quoted source omitted)). "Properly applied, the plain-meaning approach is not 'literalistic'; rather, the ascertainment of meaning involves a 'process of analysis' focused on deriving the fair meaning of the text itself." *Id.* (citing *Kalal*, 271 Wis. 2d 633, ¶¶46, 52). "Statutory interpretation centers on the 'ascertainment of meaning,' not the recitation of words in isolation." *Id.*, ¶13.

¶49 "'A review of statutory history is part of our analysis' because it is part of the context in which we interpret statutory terms." *County of Dane v. LIRC*, 2009 WI 9, ¶27, 315 Wis. 2d 293, 759 N.W.2d 571 (quoting *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581); *see also Brey*, 400 Wis. 2d 417, ¶20.

¶50 "'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment

of its meaning.'" **Kalal**, 271 Wis. 2d 633, ¶46 (quoting **Bruno v. Milwaukee Cnty.**, 2003 WI 28, ¶20, 260 Wis. 2d 633, 660 N.W.2d 656).

¶51    Golla argues that "the County lacks the authority under [WIS. STAT. § 59.692] to enforce its General Zoning Ordinance by prohibiting the home's vertical addition or requir[ing that] Golla obtain a land use permit or variance before commencing construction."   Before proceeding, we clarify that "prohibiting" the addition before construction was commenced and "requir[ing that] Golla obtain a land use permit or variance" for the addition before commencing construction are two distinct concepts.   Golla points to nothing in the record showing that the County "prohibited" *Golla* from constructing the addition before she commenced construction; rather, the record shows that Golla never gave the County the opportunity to take any variance or permitting action (which she could have challenged) before construction commenced.

¶52    The question properly stated is whether WIS. STAT. § 59.692 "prohibited" *the County* from, pursuant to the General Zoning Ordinance, requiring a land use permit and, as a condition precedent to issuing that permit, requiring a variance for construction of an addition that encroaches on the side yard setback. We first examine the statutory and ordinance framework governing county zoning authority.   We then explain why the answer to this question is no, based on the statutory language, interpreted in relation to the statute's scope, purpose, and context, the language of related statutes, and statutory history.   We address Golla's arguments to the contrary in the course of our analysis.

### 1.  Pertinent Statutory Framework

¶53    Under Wisconsin law, counties have "only such powers as are expressly conferred upon [them] or necessarily implied from the powers expressly

given or from the nature of the grant of power." ***Town of Vernon v. Waukesha Cnty.***, 102 Wis. 2d 686, 689, 307 N.W.2d 227 (1981). Counties have general zoning authority under WIS. STAT. § 59.69(1), (4), and (5), which grant counties the power to adopt general zoning ordinances governing the "territory within" and "areas within" the counties. Sec. 59.69(1), (4). *See also* ***State ex rel. Anderson v. Newbold***, 2021 WI 6, ¶24, 395 Wis. 2d 351, 954 N.W.2d 323 (§ 59.69 grants counties general zoning authority). Separate from counties' general zoning authority, in 1966, the legislature required that counties "enact zoning ordinances specific to shorelands." ***Anderson***, 395 Wis. 2d 351, ¶24; WIS. STAT. § 59.692(1c). "Shorelands" are defined as "the area within" "[o]ne thousand feet" of the "high-water mark of" "a lake, pond or flowage," and "[t]hree hundred feet" of the "high-water mark of" "a river or stream." Sec. 59.692(1)(b)1.-2. The 1966 legislation mandating county shoreland zoning represented the legislature's balancing of public interests in navigable waters and private interests in the use of privately owned land *with respect to shorelands*. Paul G. Kent, *On the Waterfront: New Shoreland Zoning Laws*, Wisconsin Lawyer, January 2017, at 14.

¶54    "'The basic purpose of a shoreland zoning ordinance is to protect navigable waters and the public rights therein from the degradation and deterioration which result[] from uncontrolled use and development of shorelands.'" ***Forest Cnty. v. Goode***, 219 Wis. 2d 654, 678, 579 N.W.2d 715 (1998) (quoted source omitted). Specifically, WIS. STAT. § 59.692(1c) provides: "To effect the purposes of [WIS. STAT. §] 281.31 and to promote the public health, safety and general welfare, each county shall zone by ordinance all shorelands in its unincorporated area. *The requirements in this ordinance shall relate to the purposes in s. 281.31(1).*" (Emphasis added.) Those purposes include authorizing municipal shoreland zoning regulations that promote the "efficient use, conservation,

21

development and protection of this state's water resources," "relate to lands under, abutting or lying close to navigable waters," and "further the maintenance of safe and healthful conditions; prevent and control water pollution; protect spawning grounds, fish and aquatic life; control building sites, placement of structure and land uses and reserve shore cover and natural beauty." Sec. 281.31(1).

¶55   In 1966, the legislature set *minimum* shoreland zoning standards for county shoreland zoning ordinances, as established by the Department of Natural Resources. Kent at 14; *see* WIS. STAT. § 59.692(1)(c) (defining "shoreland zoning standard" as "a standard for ordinances enacted under this section that is promulgated as a rule by the department [of natural resources].").  These shoreland zoning standards are codified at WIS. ADMIN. CODE § NR 115.05 (Feb. 2022).[8]  That section sets shoreland zoning standards for minimum lot sizes; shoreland setbacks; removal and management of vegetation; filling, grading, lagooning, dredging, ditching, and excavating; impervious surfaces and height; and nonconforming structures and uses. *See* WIS. ADMIN. CODE § NR 115.05(1)(a)-(g).

¶56   In a series of acts in the 2015 legislative session, the legislature enacted significant changes to the shoreland zoning scheme that rebalanced public interests in navigable waters and private interests in privately owned shorelands. Among other things, the amendments directed that the standards previously established by the Department of Natural Resources are now *maximum regulatory* standards for county shoreland zoning. *See* Kent at 16; 2015 Wis. Acts 55, 167, 178, and 391.  Now, "[a] county shoreland zoning ordinance enacted pursuant to WIS. STAT. § 59.692 cannot be more restrictive than the standards that have been

---

[8] All references to the Wisconsin Administrative Code are to the February 2022 register.

22

enacted at the state level: 'an ordinance enacted under this section may not regulate a matter more restrictively than the matter is regulated by a shoreland zoning standard.' [Sec.] 59.692(1d)(a)." ***Anderson***, 395 Wis. 2d 351, ¶25.

¶57    Pertinent here, Golla points to no shoreland zoning standard for side yard setbacks or land use permits. *See also* Kent at 16 n. 27 (stating that counties retain the authority to regulate matters that are not regulated by a shoreland zoning standard under WIS. STAT. § 59.692(1)(d)(b), and noting that nothing in the statutes or the state shoreland zoning standards addresses side yard setbacks). Thus, it is undisputed that the shoreland zoning standards have no application to the zoning ordinance provisions as issue here.

¶58    In the same series of acts in the 2015 legislative session, the legislature also enacted additional restrictions addressing specific aspects of shoreland zoning in addition to the matters addressed by the Department of Natural Resources shoreland zoning standards. 2015 Wis. Acts 55, §§ 1922b-1922l; 167, §§ 1-6; 178, § 6; and 391, §§ 4-10. Among other things, the legislature created WIS. STAT. § 59.692(1k) and (5m), which are two of the subsections upon which Golla relies.

¶59    We address in detail in the analysis below the provisions in WIS. STAT. § 59.692 that Golla argues bar the County's enforcement action here.

2.  Pertinent Ordinance Framework

¶60    The County has enacted a Code of Ordinances that includes both a General Zoning Ordinance, Chapter 34, and a Shoreland Zoning Ordinance, Chapter 32. WAUPACA COUNTY, WIS., GENERAL ZONING ORDINANCE Chapter 34; WAUPACA COUNTY, WIS., SHORELAND ZONING ORDINANCE Chapter 32. The provisions in the General Zoning Ordinance apply "in all of the unincorporated

areas of the County." GENERAL ZONING ORDINANCE, Ch. 34, § 1.03. The Shoreland Zoning Ordinance provides that more restrictive provisions in the General Zoning Ordinance that do not relate only to shorelands "prevail" over less restrictive provisions in the Shoreland Zoning Ordinance that relate only to shorelands. SHORELAND ZONING ORDINANCE, Ch. 32, §§ 2.5 and 2.6.[9]

¶61 This case involves two provisions in the General Zoning Ordinance: a land use permit provision that applies to structural alterations (Chapter 34, Section 14.03(5)), and a side yard setback provision that mandates a ten-foot side yard setback for property in a sewered residential district, which includes Golla's property (Chapter 34, Section 4.0)). The parties have not in briefing or at oral

---

[9] The Shoreland Zoning Ordinance, Chapter 32, Section 2.5 states:

> The provisions of this ordinance supersede any provisions in a county zoning ordinance that solely relate to shorelands. In other words, if a zoning standard only applies to lands that lie within the shoreland and applies because the lands are in shoreland, then this ordinance supersedes those provisions. However, *where an ordinance adopted under a statute other than s. 59.692, Wis. Stats., does not solely relate to shorelands and is more restrictive than this ordinance, for example a floodplain ordinance, that ordinance shall continue in full force and effect to the extent of the greater restrictions.*
>
> ….
>
> *(4) The provisions of the Waupaca County [General] Zoning Ordinance are hereby incorporated by reference; these provisions shall only apply to the shoreland area where they impose greater restrictions than this ordinance otherwise imposes.*

WAUPACA COUNTY, WIS., SHORELAND ZONING ORDINANCE, Ch. 32, § 2.5 (emphasis added).

Similarly, the Shoreland Zoning Ordinance, Chapter 32, Section 2.64 states: "*The provisions of the Waupaca County Zoning Ordinance are hereby incorporated by reference; these provisions shall only apply to the shoreland area where they impose greater restrictions than this ordinance otherwise imposes.*" SHORELAND ZONING ORDINANCE, Ch. 32, § 2.64 (emphasis added.).

argument identified any land use permit or side yard setback provisions in the Shoreland Zoning Ordinance. Golla does not dispute that, if we reject her arguments that these provisions do not apply under WIS. STAT. § 59.692 because her property is in the shoreland, a land use permit and variance would be required for the addition.

## C. Analysis

¶62    Golla argues that the County may not apply and enforce the side yard setback and land use permit provisions in its General Zoning Ordinance as to Golla's shoreland property under three different provisions in WIS. STAT. § 59.692. Golla frames these three connected but alternative statutory bases for her argument as follows: (1) the general side yard setback and land use permit provisions can be applied only to non-shoreland property in the County, because if they were applied to shorelands they would "relate to" shorelands and thus enforcement of them would be barred under § 59.692(5); or (2) if these general provisions can be applied to shoreland property, they become "shoreland zoning ordinance" provisions subject to the restrictions on shoreland zoning ordinances in § 59.692(1k)(a)4.; or (3) application and enforcement of these general provisions as to Golla's addition are barred under § 59.692(5m).

¶63    We address and reject each of these alternative propositions in turn. Undergirding each of our conclusions is the following premise: under the statutory scheme laid out by the legislature, which establishes two distinct zoning regimes, WIS. STAT. § 59.692 addresses county shoreland zoning ordinance provisions aimed at protecting shorelands and navigable waters, and WIS. STAT. § 59.69 addresses county general zoning ordinance provisions aimed at more general, county-wide purposes.

### 1. Enforcement barred because provisions "relate to" shorelands under WIS. STAT. § 59.692(5)

¶64   In her briefing, Golla begins with WIS. STAT. § 59.692(5), which states, "An ordinance enacted under this section [§ 59.692] supersedes all provisions of an ordinance enacted under s. 59.69 [that is, a general zoning ordinance] that relate to shorelands."[10]   Golla argues that general zoning ordinance provisions "relate to shorelands" whenever they are applied to regulate a shoreland property like hers.   In other words, according to Golla, the phrase, "provisions [of a general zoning ordinance] that relate to shorelands" means any general ordinance provisions that can be applied to shoreland property.   As we understand her argument, she interprets subsec. (5) to mean that, as to any shoreland property, the shoreland zoning ordinances supersede all general zoning ordinance provisions and, as a result, no general provisions can ever be applied to any shoreland property.

¶65   As we explain, this interpretation is not a fair meaning of the subsection's language and would have the absurd result of upending county general zoning authority.   *See **Brey***, 400 Wis. 2d 417, ¶11 ("ascertainment of meaning involves a process of analysis focused on deriving the fair meaning of the text itself" (internal quotation marks and citation omitted)); ***Kalal***, 271 Wis. 2d 633, ¶46 (we interpret statutory language "reasonably, to avoid absurd or unreasonable results").

### a. Fair meaning of WIS. STAT. § 59.692(5)

¶66   The only reasonable meaning of the phrase in WIS. STAT. § 59.692(5), "provisions [of a general zoning ordinance] that relate to shorelands," is general

---

[10]   The current WIS. STAT. § 59.692(5) pre-existed the amendments in the 2015 legislative session.  It was created in 1965 Wisconsin Laws ch. 614 (the Wisconsin Water Resources Act of 1965), section 22, as WIS. STAT. § 59.971(5), which was changed to the current numbering in 1995 Wis. Act 201, § 476.

ordinance provisions that address issues that are specific to shoreland property and that serve the purpose of protecting shorelands and navigable waters. In other words, "provisions … that relate to shorelands" means the subset of general ordinance provisions that *specifically* relate to shorelands. This interpretation is consistent with the common meaning of the term "relate to," as connected with a specific topic. *See Relate to*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/relate%20to (The phrase "relate to" means "connect (something) with (something else)." "be connected with," "be about (someone or something).") (last visited June 20, 2022).[11] Thus, "relate to" does not mean, as argued by Golla, "can be applied to." Rather, "relate to" means "connect (something) with (something else)." Here, that "something else" is the reasons that shoreland zoning ordinances are enacted—to protect shorelands and navigable waters by balancing public rights in navigable waters with private rights in privately owned shoreland property. Expressed more concisely, that "something else" is the purposes of and interests protected by shoreland zoning.

¶67 Golla's interpretation would render the phrase "that relate to shorelands" entirely superfluous. If shoreland zoning ordinances supersede all general zoning ordinances for shoreland property, then WIS. STAT. § 59.692(5) would need simply state: "An ordinance enacted under this section [59.692] supersedes all provisions of an ordinance enacted under s. 59.69."

¶68 Thus, Golla's reliance on the "relate to" language in WIS. STAT. § 59.692(5) fails based on a fair meaning interpretation of that language because the General Zoning Ordinance side yard setback and land use permit provisions, which

---

[11] *See Lemmer v. Schunk*, 2008 WI App 157, ¶10, 314 Wis. 2d 483, 760 N.W.2d 446 ("We may use a dictionary to establish the common meaning of a word.").

apply to all property in the County, are by their terms not connected specifically with shorelands or the purposes of and interests protected by shoreland zoning.

¶69 Golla points to the General Zoning Ordinance's statement that it was enacted "to achieve the objectives outlined in [WIS. STAT. §§] 59.69, *59.692*, 59.693, and 87.60." GENERAL ZONING ORDINANCE, Ch. 34, § 1.01) (emphasis added). According to Golla, because the General Zoning Ordinance is intended to serve the purposes of § 59.692, all of its provisions relate to shorelands and are therefore superseded when applied in shorelands. This argument paints with too broad a brush. The cited statement of objectives merely indicates that certain provisions of the General Zoning Ordinance may have the purpose of protecting shorelands, as authorized in § 59.692(1c). *See* § 59.692(1c) (providing that a county may fulfill the mandate to zone shorelands either as part of its general zoning ordinance authority or by a separate shoreland zoning ordinance). However, as explained above, it is only those general ordinance provisions that have the purpose of protecting shorelands that would "relate to" shorelands, and it is only any such provisions that would be superseded pursuant to § 59.692(5). Indeed, if the General Zoning Ordinance was somehow barred from including provisions that have the purpose of protecting shorelands, then the entire subsec. (5) would be superfluous because there would be no provisions enacted under a county's general zoning authority that would "relate to" shorelands and, therefore, no provisions to be superseded.

¶70 Golla also cites *Hegwood v. Town of Eagle Zoning Bd. of Appeals*, 2013 WI App 118, 351 Wis. 2d 196, 839 N.W.2d 111, but that case is inapposite. In that case, this court ruled that the town lacked authority to enforce a town ordinance relating to shorelands, specifically a provision that imposed a shoreland setback. *Id.*, ¶¶1-2, 13-15. In contrast, this case involves neither an ordinance

relating to shorelands nor a shoreland setback (which could relate only to shorelands). Moreover, as the County points out, after *Hegwood* was decided, the legislature created WIS. STAT. §§ 60.61(3r) and 60.62(5), which expressly provide that, although towns do not have authority to enact zoning ordinances specific to shorelands, towns may enact and enforce general zoning ordinances that apply in shorelands. Secs. 60.61(3r) and 60.62(5). The "relate to shorelands" language in WIS. STAT. § 59.692(5) similarly does not prohibit counties, which do have authority to enact zoning ordinances specific to shorelands, from enacting and enforcing provisions in general ordinances applicable to all property in the counties including shorelands.

### b. Absurd result

¶71　Golla's interpretation would effectuate a radical transformation of the interplay between county general zoning under WIS. STAT. § 59.69 and county shoreland zoning under WIS. STAT. § 59.692. The implication of Golla's interpretation would be that, as to shoreland property, counties could apply only zoning provisions that relate to the specific objectives of § 59.692, to protect shorelands and navigable waters. If § 59.692(5) preempts all general zoning provisions that do not relate to protecting shorelands and navigable waters, no general zoning provisions could ever be applied in shorelands, including those that have no connection with the purposes of shoreland zoning such as side yard and road setbacks, land use permits, and district-related use regulations.

¶72　Golla points to, and we discern, no statute that indicates an intent to nullify all general zoning ordinance provisions as to shorelands, or to abolish for property in shorelands a county's authority to impose general zoning requirements, such as side yard setbacks and land use permits, which do not specifically relate to

shorelands.  Rather, to interpret WIS. STAT. § 59.692(5) as prohibiting counties from applying general zoning ordinance provisions on any shoreland property would establish a limitation that does not exist in the statute that gives counties general zoning authority.

¶73    Golla cited at oral argument WIS. STAT. § 59.69(1) and (4), but she pointed to no language in those subsections that supports her argument.  Section 59.69(1) broadly sets out a county's planning and zoning authority over "territory within the county," and § 59.69(4) similarly broadly sets out a county's power to by ordinance adopt regulations that are "best suited to carry out the purposes of this section" "within the areas within [the] county."  Sec. 59.69(1) and (4).[12]  The

_____

[12]  WISCONSIN STAT. § 59.69(1) states:

> PURPOSE.  It is the purpose of this section to promote the public health, safety, convenience and general welfare; to encourage planned and orderly land use development; to protect property values and the property tax base; to permit the careful planning and efficient maintenance of highway systems; to ensure adequate highway, utility, health, educational and recreational facilities; to recognize the needs of agriculture, forestry, industry and business in future growth; to encourage uses of land and other natural resources which are in accordance with their character and adaptability; to provide adequate light and air, including access to sunlight for solar collectors and to wind for wind energy systems; to encourage the protection of groundwater resources; to preserve wetlands; to conserve soil, water and forest resources; to protect the beauty and amenities of landscape and man-made developments; to provide healthy surroundings for family life; and to promote the efficient and economical use of public funds.  To accomplish this purpose the board may plan for the physical development and zoning of territory within the county as set forth in this section and shall incorporate therein the master plan adopted under s. 62.23(2) or (3) and the official map of any city or village in the county adopted under s. 62.23(6).

WISCONSIN STAT. § 59.69(4) states:

> EXTENT OF POWER. For the purpose of promoting the public health, safety and general welfare the board may by ordinance effective within the areas within such county outside the limits of incorporated villages and cities establish districts of such number, shape and area, and adopt such regulations for each such district as the board considers best suited to carry out the purposes of this section. The board may establish mixed-use districts that contain any combination of uses, such as industrial, commercial, public, or residential uses, in a compact urban form. The board may not enact a development moratorium, as defined in s. 66.1002(1)0(b), under this section or s. 59.03, by acting under ch. 236, or by acting under any other law, except that this prohibition does not limit any authority of the board to impose a moratorium that is not a development moratorium. The powers granted by this section shall be exercised through an ordinance which may, subject to sub. (4e), determine, establish, regulate and restrict:
>
> (a) The areas within which agriculture, forestry, industry, mining, trades, business and recreation may be conducted, except that no ordinance enacted under this subsection may prohibit forestry operations that are in accordance with generally accepted forestry management practices, as defined under s. 823.075(1)(d).
>
> (b) The areas in which residential uses may be regulated or prohibited.
>
> (c) The areas in and along, or in or along, natural watercourses, channels, streams and creeks in which trades or industries, filling or dumping, erection of structures and the location of buildings may be prohibited or restricted.
>
> (d) Trailer or tourist camps, motels, and manufactured and mobile home communities.
>
> (e) Designate certain areas, uses or purposes which may be subjected to special regulation.
>
> (f) The location of buildings and structures that are designed for specific uses and designation of uses for which buildings and structures may not be used or altered.
>
> (g) The location, height, bulk, number of stories and size of buildings and other structures.

31

legislature has not carved out shoreland property from the reach of a county's general zoning authority in either of these provisions.

¶74 Golla argues that to reject her interpretation would render WIS. STAT. § 59.692 superfluous, in that a county would be able to impose on shoreland property a requirement in a general zoning ordinance under WIS. STAT. § 59.69 that would not be allowed under § 59.692. This argument is refuted by the operation of § 59.692(1c) and (5), which ensure that any zoning provisions that serve the shoreland-specific purposes of § 59.692 are superseded by that statute. That § 59.692 does not preempt zoning provisions that are not connected to the specific purposes of shoreland zoning preserves the preeminence of § 59.692 in defining a county's shoreland-specific zoning authority.

¶75 In sum, by its language, WIS. STAT. § 59.692(5) establishes the preeminence of the administrative standards and legislative restrictions established pursuant to § 59.692 over provisions in a general zoning ordinance that are specifically connected with or about shorelands. *See* § 59.692(5). Here, the General Zoning Ordinance side yard setback provision applies to any property in a sewered residential district in the County and the land use permit provision applies to any

---

(h) The location of roads and schools.

(i) Building setback lines.

(j) Subject to s. 66.10015(3), the density and distribution of population.

(k) The percentage of a lot which may be occupied, size of yards, courts and other open spaces.

(l) Places, structures or objects with a special character, historic interest, aesthetic interest or other significant value, historic landmarks and historic districts.

(m) Burial sites, as defined in s. 157.70 (1)(b).

structural alteration on any property in the County. Neither provision is specifically connected with or about shorelands. Thus, § 59.692(5) does not bar enforcement of the side yard setback and land use permit provisions in the County General Zoning Ordinance because those provisions do not "relate to" shorelands.

### 2. Enforcement Barred Because Provisions "Become" Shoreland Zoning Ordinance Provisions Under WIS. STAT. § 59.692(1k)(a)4.

¶76    Alternatively, Golla argues that, if a county applies a general zoning ordinance provision to a *shoreland* property, then that application converts the general provision into a *shoreland* zoning ordinance provision that is subject to the standards and restrictions for shoreland zoning ordinances in WIS. STAT. § 59.692. Here, the argument continues, if the side yard setback and land use permit provisions are applied to this shoreland property, they become shoreland zoning ordinance provisions that may not be enforced under § 59.692(1k)(a)4. That section bars a county from "enacting or enforcing a shoreland zoning ordinance" that "[r]equires any approval or imposes any fee … for, or otherwise prohibits or regulates, the vertical expansion of … a structure of which any part is legally located in the shoreland setback area by operation of a variance granted before July 13, 2015."[13]

---

[13] WISCONSIN STAT. § 59.692(1k)(a)4. states in pertinent part:

> The department may not impair the interest of a landowner in shoreland property by establishing a shoreland zoning standard, and a county may not impair the interest of a landowner in shoreland property by enacting or enforcing a shoreland zoning ordinance that [does any] of the following:
>
> ….

¶77 The parties do not dispute that the addition is a vertical expansion of a structure that is legally located in the shoreland setback area by operation of the 1988 variance. The parties also do not dispute that the side yard setback and land use permit provisions in its General Zoning Ordinance "require approval" or "otherwise regulate" the construction of the addition, which would be prohibited if the provisions were subject to WIS. STAT. § 59.692(1k)(a)4. And, the parties do not dispute that § 59.692(1k)(a)4. applies only to shoreland zoning standards promulgated by the Department of Natural Resources and to shoreland zoning ordinances enacted by counties under § 59.692. As we have explained above, the side yard setback and land use permit provisions at issue here are neither shoreland zoning standards nor included in a shoreland zoning ordinance. Nevertheless, Golla

---

4. Requires any approval or imposes any fee or mitigation requirement for, or otherwise prohibits or regulates, the vertical expansion of a nonconforming structure or a structure of which any part is legally located in the shoreland setback area by operation of a variance granted before July 13, 2015, unless the vertical expansion would extend more than 35 feet above grade level.

WISCONSIN. STAT. § 59.692(1k)(a)4. as currently worded became effective on April 28, 2016, 2015 Wis. Act 391, § 6, or two days after Golla obtained the building permit from the Town on April 26, 2016, but before she proceeded with the addition in May 2016. The provision had, when it was created in July 2015, applied only to nonconforming structures, and the parties agree that this case does not concern a nonconforming structure. 2015 Wis. Act 55, § 1922F. The provision was amended in April 2016 to apply also to "a structure of which any part is legally located in the shoreland setback area by operation of a variance granted before July 13, 2015." 2015 Wis. Act 391, § 6; *see also* 2015 Wis. Act 391, §§ 5 and 8 (adding the same language to two other provisions that had applied only to nonconforming structures). It is this amendment that would apply to Golla's addition if we accepted her argument that the County's general zoning provisions requiring a variance and land use permit do not apply.

Golla also cites WIS. STAT. § 59.692(1k)(a)2., but that provision does not address additions to an existing structure.

argues that by virtue of being applied to her shoreland property, these general zoning provisions *become* shoreland zoning ordinance provisions.

¶78    Golla's argument fails because it is contrary to the statutory scheme that establishes two distinct regimes:  permissive general zoning that applies to all property within a county, and mandatory shoreland zoning that applies only to property in the shoreland.  *See* WIS. STAT. § 59.69(1) and (4) (authorizing counties to enact zoning that serves a broad array of purposes that concern the promotion of "public health, safety, convenience and general welfare," none of which pertain only to shorelands), WIS. STAT. § 59.692(1c) (requiring that counties enact zoning that applies only to shorelands and that serves the purposes of WIS. STAT. § 281.31(1), which concern the protection of navigable waters); *see also* **Goode**, 219 Wis. 2d at 678 ("The basic purpose of a shoreland zoning ordinance is to protect navigable waters and the public rights therein from the degradation and deterioration which result[] from uncontrolled use and development of shorelands.").[14]

---

[14] The County Zoning Ordinances reflect this distinct regime.  The General Zoning Ordinance's statement of purpose references only countywide concerns and makes no mention of either shorelands or navigable waters or concerns connected specifically to or about shorelands or navigable waters:

This Ordinance is adopted in order to promote and to protect public health, safety, comfort, convenience, prosperity, aesthetics, and other aspects of the general welfare; and, more specifically, to fix reasonable standards to which buildings and structures shall conform, to regulate and restrict buildings in all of the unincorporated areas of the County, to guide the proper distribution and location of various land uses, to promote the safety and efficiency of the streets and highways, to provide for adequate light, air, sanitation and drainage, to conserve natural resources, to provide safety from fire and other hazards, to define the powers and duties to the administrative bodies as provided hereinafter, and to prescribe penalties for the violation of the provisions of this Ordinance or any amendment thereto.

GENERAL ZONING ORDINANCE, Ch. 34, § 1.03.

In contrast, consistent with the statutes, the Shoreland Zoning Ordinance expressly references to and focuses on shorelands and navigable waters in its findings of fact and statement of purpose:

1.2 FINDINGS OF FACT.

Uncontrolled use of the shorelands and pollution of the navigable waters of Waupaca County would adversely affect the public health, safety, convenience, and general welfare and impair the tax base. The legislature of Wisconsin has delegated responsibility to the counties to further the maintenance of safe and healthful conditions; prevent and control water pollution; protect spawning grounds, fish, and aquatic life; control building sites, placement of structures and land uses; and to preserve shore cover and natural beauty. This responsibility is hereby recognized by Waupaca County, Wisconsin.

1.3 PURPOSE.

For the purpose of promoting the public health, safety, convenience and welfare, and protect the public trust in navigable waters this ordinance has been established to:

1.31    Further The Maintenance of Safe and Healthful Conditions and the Prevention and Control of Water Pollution ….

….

1.32    Protect Spawning Grounds, Fish, and Aquatic Life ….

¶79 As statutorily defined, a shoreland zoning provision may be enacted in a separate shoreland zoning ordinance or in a general zoning ordinance. WIS. STAT. § 59.692(1c). It is undisputed that the side yard setback and land use permit provisions at issue here are neither in a separate shoreland zoning ordinance nor applicable only to shoreland property or directed at protecting shorelands and navigable waters. Golla points to no language in § 59.692 or WIS. STAT. § 59.69 that converts such general zoning provisions to shoreland zoning ordinance provisions merely because they are applied to shoreland property. Nor need there be any such language, because § 59.692(1c) and (5) ensure that § 59.692 governs shoreland zoning regardless of where a shoreland-specific zoning provision is located.

¶80 In sum, Golla provides no legal authority to support her argument that applying the general zoning provisions at issue here to shoreland property converts the provisions to shoreland zoning ordinance provisions subject to the standards and restrictions for shoreland zoning ordinances in WIS. STAT. § 59.692(1k)4. As stated, these general zoning provisions were not enacted for, and do not serve, the purposes of protecting shoreland and navigable waters and balancing public and private rights specific to shorelands.

----

….

1.33 Control Building Sites, Placement of Structures, and Land Uses Through:

1) Separating conflicting land uses.

SHORELAND ZONING ORDINANCE, Ch. 32, §§ 1.2 and 1.3.

### 3. Enforcement Barred by WIS. STAT. § 59.692(5m)

¶81 Finally, Golla argues that this enforcement action is barred by WIS. STAT. § 59.692(5m). This statute states, "If a county has in effect on or after July 14, 2015, a provision in an ordinance that is inconsistent with subsecs. (1d), (1f), (1k), or (2m), the provision does not apply and may not be enforced."[15] Golla argues that the reference in subsec. (5m) to "an ordinance" means "any zoning ordinance," regardless of whether the provisions at issue specifically regulate shorelands. She further contends that the general ordinance provisions the County is seeking to enforce are inconsistent with subsec. (1k) because they would require an approval and impose a fee for the vertical expansion of her home.

¶82 While Golla's interpretation may seem reasonable when portions of the statutory language are read in isolation, it is not reasonable when the statutory language is read as a whole. For reasons we now explain, we conclude that the reasonable interpretation of the phrase "a provision in an ordinance" in WIS. STAT.

---

[15] This provision was created by 2015 Wis. Act 55, § 1922L, effective July 2015.

Of the four subsections referenced in WIS. STAT. § 59.692(5m), the only one that would address the Golla addition (and the subsection on which Golla focused at oral argument) is § 59.692(1k)(a)4. As stated above, that section limits what a county may do by "establishing a shoreland zoning standard" or "by enacting or enforcing a shoreland zoning ordinance," which "[r]equires any approval or imposes any fee … for, or otherwise prohibits or regulates, the vertical expansion of … a structure of which any part is legally located in the shoreland setback area by operation of a variance granted before July 13, 2015."

The first subsection referenced in WIS. STAT. § 59.692(5m), § 59.692(1d), provides that "an ordinance enacted under this section may not regulate a matter more restrictively than the matter is regulated by a shoreland zoning standard." Sec. 59.692(1d)(a). As explained above, neither side yard setbacks nor land use permits are regulated by a shoreland zoning standard. The second subsection, § 59.692(1f)(a), limits what "a county shoreland zoning ordinance" may require as to buffer zones. Neither side yard setbacks nor land use permits apply to buffer zones. The fourth subsection, § 59.692(2m), provides, "A county shoreland zoning ordinance may not regulate the construction of a structure on a substandard lot in a manner that is more restrictive than the shoreland zoning standards for substandard lots." Neither side yard setbacks nor land use permits regulate substandard lots.

§ 59.692(5m) is a provision in an ordinance which regulates shorelands. More specifically, and consistent with the immediately surrounding subsections as well as with the scope and purpose of the statute, the reasonable interpretation of the phrase "a provision in an ordinance" is a provision in a shoreland zoning ordinance enacted under § 59.692 or a provision in a general zoning ordinance enacted under WIS. STAT. § 59.69 that relates to shorelands. *See **Kalal***, 271 Wis. 2d 633, ¶46 (Statutory language must be interpreted "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."). Because the provisions at issue here are not in a shoreland zoning ordinance and do not relate to shorelands, application and enforcement of those provisions to Golla's property are not barred by § 59.692(5m).

¶83 We begin by looking to the surrounding subsections, WIS. STAT. § 59.692(5) and (6), which were previously enacted (in 1965) alongside each other and are now immediately preceding and following § 59.692(5m).[16]

¶84 First, because the complete phrase in WIS. STAT. § 59.692(5m) is "a provision in an ordinance," we look to a similar phrase in the immediately preceding § 59.692(5) to interpret that phrase as a whole. As explained above, subsec. (5) references "*provisions* of an ordinance … *that relate to shorelands*" and ensures that any provisions in a general zoning ordinance that relate to (i.e., are connected with or about) shorelands are preempted by an ordinance enacted under § 59.692. *See* § 59.692(5) ("An ordinance enacted under this section [59.692] supersedes all

---

[16] As stated in footnote 10, WIS. STAT. § 59.692(5) was created in 1965 Wisconsin Laws, ch. 614. Section 59.692(6) was also created at the same time, as then-numbered WIS. STAT. § 59.971(6). As also stated above, § 59.692(5m) was created in 2015 Wis. Act 391 and placed between subsections (5) and (6).

*provisions* of an ordinance enacted under [WIS. STAT. § ]59.69 *that relate to shorelands*." (emphasis added)). The repetition of the phrase "provision in an ordinance" in subsec. (5m) immediately following the similar phrase in subsec. (5) may suggest that the phrase in subsec. (5m) has a similar meaning—a provision of a general zoning ordinance which relates to shorelands.

¶85 Second, we look to the repeated use of "an ordinance" in the immediately following WIS. STAT. § 59.692(6), which provides: "If a county does not enact *an ordinance* by January 1, 1968, or if the department, after notice and hearing, determines that a county has enacted *an ordinance* that fails to meet the shoreland zoning standards, the department shall adopt such *an ordinance* for the county." (Emphasis added.) It is not reasonable to interpret subsec. (6)'s three references to "an ordinance" to mean *any* ordinance. The only reasonable interpretation of the first two references to "an ordinance" in subsec. (6) is a shoreland zoning ordinance or shoreland-specific zoning provisions—provisions that "relate to" shorelands under § 59.692(5)—in a general zoning ordinance. *See* § 59.692(1c) (providing that a county may fulfill the mandate to zone shorelands either as part of its general zoning ordinance authority or by a separate shoreland zoning ordinance). It would not make sense to require the Department of Natural Resources to adopt a shoreland zoning ordinance for a county where the county has already enacted, consistent with administrative shoreland zoning standards and statutory shoreland zoning restrictions, either a separate shoreland zoning ordinance or provisions that relate to shorelands in its general zoning ordinance, as allowed under § 59.692(1c). The only reasonable interpretation of the third reference to "an ordinance" in subsec. (6) is a separate shoreland ordinance. It would not make sense to require the department to enact zoning provisions related to shorelands to be

40

inserted in a county general zoning ordinance, particularly when counties are not required to enact general zoning ordinances. *See* WIS. STAT. § 59.69(1).

¶86    The use of the same term, "an ordinance," in WIS. STAT. § 59.692(5), (5m) and (6) directly next to each other reasonably indicates that the term has a similar meaning in all three provisions. *See **Bank Mut. v. S.J. Boyer Const., Inc.**,* 2010 WI 74, ¶31, 326 Wis. 2d 521, 785 N.W.2d 462 ("When the same term is used throughout a chapter of the statutes, it is a reasonable deduction that the legislature intended that the term possess an identical meaning each time it appears."). Under this principle, the reasonable interpretation of "provision in an ordinance" in subsec. (5m), consistent with the use of "provisions of an ordinance" in subsec. (5) and "an ordinance" in subsec. (6), is a provision in a shoreland zoning ordinance that is enacted under § 59.692 or a provision in a general zoning ordinance enacted under WIS. STAT. § 59.69 which relates to shorelands. This interpretation is also consistent with the directive in § 59.692(1c) that a county may fulfill the mandate to zone shorelands either through a separate shoreland zoning ordinance or through provisions specifically related to shorelands in its general zoning ordinance. The location of subsec. (5m) between the preexisting subsecs. (5) and (6), when read together with subsec. (1c), renders it unreasonable to interpret "a provision in an ordinance" in subsec. (5m) to mean *any* provision in any zoning ordinance.

¶87    The scope of WIS. STAT. § 59.692(5m) also supports our interpretation of "a provision in an ordinance." Importantly, the subject of subsec. (5m) is "a provision in an ordinance" which is in effect "*on or after July 14, 2015*" and is inconsistent with one of four enumerated subsections:  § 59.692(1d), (1f), (1k), and (2m). (Emphasis added.). Those four subsections were enacted effective July 14, 2015 and they imposed new restrictions on a county's shoreland zoning authority. *See* 2015 Wis. Act 55, §§ 1922 D, E, F, and J (creating § 59.692(1d),

(1f), (1k), and amending (2m)). Subsections (1d), (1f), and (2m) provide that shoreland zoning ordinances may not regulate or impose requirements regarding certain shoreland-related topics or matters; subsec. (1k) provides that a county may not enact or enforce shoreland zoning ordinances that pertain to other shoreland-related topics and matters. *See* § 59.692(1d), (1f), (1k), and (2m). The emphasis in subsec. (5m) on the effective date of the aforementioned 2015 amendments reasonably reflects the legislature's intent to reinforce the preeminence of those amendments over pre-existing as well as newly enacted provisions in shoreland zoning ordinances (as referenced in the other subsections cited by subsec. (5m)) and provisions in general zoning ordinances that relate to shorelands (as referenced in the immediately preceding, much older, § 59.692(5)) in light of the changes made to § 59.692 effective on that date. This clarification of the scope of the 2015 amendments via emphasis on the effective date refutes Golla's argument that our interpretation would render subsec. (5m) superfluous.

¶88 Our interpretation of the phrase "a provision in an ordinance" in WIS. STAT. § 59.692(5m) is also supported by the legislature's explicit focus in § 59.692 on shoreland zoning, from the statute's title, "Zoning of shoreland on navigable waters;" to the statute's statement of purpose in § 59.692(1c) (to require that counties zone shorelands to effectuate the purposes of WIS. STAT. § 281.31(1), which as quoted above pertain to the protection of navigable waters; *see also **Goode***, 219 Wis. 2d at 678); to the statute's detailed directives as to the contents of such shoreland zoning provisions in § 59.692(1), (1c), (1d), (1f), (1k), (1n), (1o), (1p), (1r), (1t), (1v), (2), (2m), (4), (5). *See **Duncan v. Asset Recovery Specialists, Inc.**,* 2022 WI 1, ¶9, 400 Wis. 2d 1, 968 N.W.2d 661 (a court's analysis of a statute's meaning is "informed by the legislature's explicit statements of legislative purpose and those reflected in a statute's context and structure").

¶89     The statutory history underlying the changes to the shoreland zoning ordinance statute, WIS. STAT. § 59.692, confirms this interpretation.  *See State v. Green*, 2022 WI 30, ¶44, 401 Wis. 2d 542, 973 N.W.2d 770 (referencing "the statutory history underlying other amendments" to the statute at issue to "confirm[]" the court's interpretation of the statute).  As stated, § 59.692(5m) was created among a series of statutory provisions that were created or amended by various legislative acts in 2015 and 2016.  As set out below, the unifying thread of the amendments made to these acts was to restrict the reach of county shoreland zoning ordinances, and provisions in general zoning ordinances that relate to shorelands, to the statewide standards and restrictions set by either the Department of Natural Resources by rule or the legislature by statute.

**Changes made by 2015 Wisconsin Act 55.**

Section 59.692(1d) (created by Section 1922D): "An ordinance enacted under this section may not regulate a matter more restrictively than the matter is regulated by a shoreland zoning standard."

Section 59.692(1f) (created by Section 1922E), setting statutory limits on what a county shoreland zoning ordinance may require with respect to vegetative buffers and buffer zones.

Section 59.692(1k) (created by Section 1922F), prohibiting the Department of Natural Resources from establishing a shoreline zoning standard and a county from enacting or enforcing a shoreland zoning ordinance from prohibiting or regulating aspects of outdoor lighting in shorelands ((1k)(a)1.), aspects of work regarding nonconforming structures ((1k)(a)2., 3., 4., (b), (c)1., (c)2.), and impervious surfaces ((1k)(am)1.).

Section 59.692(2m) (amended by Section 1922J), prohibiting a county shoreland zoning ordinance from regulating construction of a structure on a substandard lot in a manner more restrictively than shoreland zoning standards.

43

Section 59.692(4)(b) (amended by Section 1922K): "Notwithstanding s. 59.694(4), the department may not appeal a decision of the county to grant or deny a variance under this section but may, upon the request of a county board of adjustment, issue an opinion on whether a variance should be granted or denied."

Section 59.592(5m) (created by Section 1922L): "If a county has in effect on or after July 14, 2015, a provision in an ordinance that is inconsistent with sub. **(1d)**, **(1f)**, **(1k)**, or **(2m)**, the provision does not apply and may not be enforced." (Emphasis added.)

**Changes made by 2015 Wisconsin Act 167.**

Created or amended subsections in § 59.692 limiting restrictions in a county shoreland zoning ordinance on activities within the shoreland setback area (Sections 1-6).

**Changes made by 2015 Wisconsin Act 178.**

Section 59.692(1p) (created by Section 6): "This section does not authorize a county to impose a requirement, condition, or restriction on land that is not shoreland within the county."

**Changes made by 2015 Wisconsin Act 391.**

Section 59.692(1k)(a)2. (amended by Section 5): amending prohibition against shoreland zoning standards or county shoreland zoning ordinances from regulating structural alterations other than additions to a nonconforming structure, to include "a structure of which any part is legally located in the shoreland setback area by operation of a variance granted before July 13, 2015."

Section 59.692(1k)(a)4. (amended by Section 6): amending prohibition against shoreland zoning standards or county shoreland zoning ordinances from regulating the vertical expansion of a nonconforming structure, to include "a structure of which any part is legally located in the shoreland setback area by operation of a variance granted before July 13, 2015."

Section 59.692(1k)(b) (amended by Section 8): amending requirement that a county shoreland zoning ordinance allow structural alterations other than additions to a nonconforming structure that expand the structure's

footprint if necessary to comply with state or federal requirements, to include "a structure of which any part is legally located in the shoreland setback area by operation of a variance granted before July 13, 2015."

¶90 The legislature through these amendments continued to balance public rights in navigable waters, protected by county shoreland zoning provisions as set forth in WIS. STAT. § 59.692(1c), with private rights in privately owned shoreland property. However, absent from the amendments is any indication that the legislature was also balancing those private rights with the different set of public interests protected by county general zoning set forth in WIS. STAT. § 59.69(1). Nor has Golla pointed to, or has our research revealed, any language in § 59.69 corroborating the curtailment of county general zoning authority over all property in a county in the respects described in the subsections referenced in § 59.692(5m). Reading § 59.692(5m) in isolation to privilege shoreland property and exempt it from county general zoning provisions that do not relate to shorelands would be to ignore this statutory history and to adopt a "literalistic" approach divorced from the context and "fair meaning" of the text. *See **Brey***, 400 Wis. 2d 417, ¶11.

¶91 Finally, the legislative history of the amendment creating WIS. STAT. § 59.692(5m) confirms our conclusion as to its reasonable meaning. *See **Brey***, 400 Wis. 2d 417, ¶¶11, 21 (noting that legislative history is extrinsic evidence of a statute's meaning that "becomes relevant only to confirm" the statute's fair meaning). The Legislative Reference Bureau Analyses for 2015 Wis. Act 391, from its initial proposal through its final amendment, consistently note in pertinent part that "[c]urrent law" prohibits a county from enacting or enforcing "a *shoreland zoning ordinance*" that regulates certain activities in certain ways related to

nonconforming structures.[17] (Emphasis added). The analyses then state that "this" proposed legislation (which was enacted as 2015 Wisconsin Act 391) "expands *these prohibitions* to a structure of which any part is legally located in the shoreland setback area [] by operation of a variance" granted before July 13, 2015. *Id.* (emphasis added). The clear implication is that the expansion is of the restrictions on shoreland zoning, not on all zoning.

¶92   In sum, neither the 1988 variance nor WIS. STAT. § 59.692 bar the County from enforcing the side yard setback and land use permit provisions in its General Zoning Ordinance as to the addition on Golla's shoreland property. Had Golla, after her first contact with the County in 2015, applied for a land use permit and been denied for whatever reason, she could have sought administrative and, if necessary, judicial review of the denial. If the land use permit had been denied because a side yard setback variance was required, she could have raised on review her argument that no variance was required, as well as her argument that § 59.692 bars application of both the side yard setback and land use provisions. At any point in this process, the variance and land use permit may have been granted for the addition that she ultimately constructed in 2016. As the circuit court emphasized in its final order, Golla's proceeding without taking any of these steps resulted in the

---

[17] The language referenced in the text is in multiple versions of the "Analysis of the Legislative Reference Bureau" for the original bill and for subsequent amendments. These versions can be found at https://docs.legis.wisconsin.gov/2015/related/drafting_files/wisconsin_acts/2015_act_391_ab_582/02_ab_582/15_3974df.pdf and https://docs.legis.wisconsin.gov/2015/related/drafting_files/wisconsin_acts/2015_act_391_ab_582/04_asa2_ab582 (last visited June 15, 2022).

side yard setback and land use permit violations that the County sought to enforce and remedy, which leads to the next issue on appeal.[18]

## II.  INJUNCTIVE RELIEF

¶93    Golla argues that the circuit court erroneously exercised its discretion in granting injunctive relief under WIS. STAT. § 59.69(11) in two respects: (1) injunctive relief is barred because the requirements in WIS. STAT. § 66.0413, which authorizes counties to order a property owner to raze a building, were not met; and, alternatively, (2) the court failed to properly analyze the factors that apply to a decision on injunctive relief under § 59.69(11).  We address each issue in turn.

---

[18]  Because we conclude that WIS. STAT. § 59.692 does not bar this enforcement action, we need not address Golla's companion argument that the circuit court lacked subject matter jurisdiction over this case.  *See* ***Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

Moreover, our supreme court has rejected this argument in a challenge to a zoning decision, explaining:

> The problem with the [property owners'] argument is that it confuses the jurisdiction of the zoning board with that of the court.  In Wisconsin, circuit courts are courts of general jurisdiction. ***Mack v. State***, 93 Wis. 2d 287, 294, 286 N.W.2d 563 (1980).  They have subject matter jurisdiction of all matters, civil and criminal, not excepted in the constitution or prohibited by law. ***Id.*** (citing ***Dumer v. State***, 64 Wis. 2d 590, 595, 219 N.W.2d 592 (1974)).  This includes the authority to hear zoning enforcement actions arising from either town or county ordinances.

> The [property owners'] claim is better understood as an attack on the Town's jurisdiction to regulate their property in the first place.  This attack, however, should have been made at the initial certiorari review.  After all, one of the issues certiorari courts determine is whether the Town kept within its jurisdiction.

***Town of Delafield v. Winkelman***, 2004 WI 17, ¶¶19-20, 269 Wis. 2d 109, 675 N.W.2d 470.  As we have explained in the text, had Golla applied for and been denied a land use permit, she could have challenged that denial in a certiorari or other action in the circuit court.

## A. *Application of WIS. STAT. § 66.0413*

¶94    Golla argues that the circuit court erroneously exercised its discretion in granting the County's request for injunctive relief under WIS. STAT. § 59.69(11) because the County did not follow the procedures required for razing a building under WIS. STAT. § 66.0413. Golla's argument fails based on the language of each statute, as well as the lack of any legal authority offered in support.

¶95    The County brought this action under WIS. STAT. § 59.69(11). That section reads:

> PROCEDURE FOR ENFORCEMENT OF COUNTY ZONING ORDINANCE
>
> ….
>
> The rules and regulations and the districts, setback building lines and regulations authorized by this section, shall be prescribed by ordinances which shall be declared to be for the public health, safety and general welfare. The ordinances shall be enforced by appropriate forfeitures. Compliance with such ordinances may also be enforced by injunctional order at the suit of the county[.]

Sec. 59.69(11). This statute authorizes counties to enforce zoning ordinances "by injunctional order." *See also **Goode***, 219 Wis. 2d at 657 (concluding "that WIS. STAT. § 59.69(11) gives the county … the option of asking a circuit court sitting in equity for injunctive relief as a remedy for a zoning ordinance violation").

¶96    "An injunction is an equitable remedy which a court can use to compel compliance with an ordinance … or to restrain a threatened or existing violation …." RATHKOPF'S THE LAW OF ZONING AND PLANNING § 65:10 (4ᵗʰ ed. April 2022). "In acting to enforce [an] ordinance, [a municipality] may be considered to be acting on behalf of all property owners within the municipality to enforce their right to

acquire conformity with the ordinance as the quid pro quo for their own submission to the restrictions imposed upon their property." *Id.* The injunctive relief that a court may order ranges from removal of the offending structure in order to obtain full compliance with the ordinance to an "equitably crafted" alternative injunction "that does justice." *Goode*, 219 Wis. 2d at 684.

¶97 "WISCONSIN STAT. § 66.0413 governs a municipality's authority to raze buildings within its jurisdiction." *Auto-Owners Ins. v. City of Appleton*, 2017 WI App 62, ¶12, 378 Wis. 2d 155, 902 N.W.2d 532. The statute defines "raze a building" as "to demolish and remove the building and to restore the site to a dust-free and erosion-free condition." Sec. 66.0413(1)(a)2. "By its terms, [§] 66.0413(1) is concerned with protecting the public from unsafe and unsanitary buildings. Accordingly, the statute authorizes municipalities to ensure public safety by razing buildings that suffer from various defects and are 'consequently dangerous, unsafe, unsanitary or otherwise unfit for human habitation and unreasonable to repair.' Sec. 66.0413(1)(b)1." *Auto-Owner's Ins.*, 378 Wis. 2d 155, ¶20 (some internal quotation marks and internal citation omitted). "The raze order statute provides a municipality with a tool to manage dangerous buildings, nothing more." *Id.*, ¶30.

¶98 Here, Golla points to nothing in the record to show that the County requested injunctive relief in order to protect the public from an unsafe and unsanitary building. Indeed, Golla argues that there is no such evidence. Golla also cites no law supporting the proposition that the County was required to follow the procedures in WIS. STAT. § 66.0413 when seeking injunctive relief under WIS. STAT. § 59.69(11) to enforce compliance with its General Zoning Ordinance; neither does Golla cite any law supporting the proposition that § 66.0413 limits or otherwise affects the circuit court's authority to grant injunctive relief under

§ 59.69(11) for a violation of a zoning ordinance.  Accordingly, we need not consider this argument further.  *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments."  (internal citation omitted)).

¶99     In sum, the circuit court properly determined that the procedure set forth in WIS. STAT. § 66.0413 does not apply, that the County acted consistent with its authority under WIS. STAT. § 59.69(11) in requesting injunctive relief for the General Zoning Ordinance violations alleged in the complaint, and that the court had authority to grant that request.

### B.  Application of Applicable Factors

¶100   Golla argues that if, as we have concluded, the circuit court had the authority to grant the County's request for injunctive relief, then the court erroneously exercised its discretion because it "failed to properly analyze" the equitable factors relevant to its consideration of that request.  We first state the applicable standard of review and legal principles, including the relevant factors. We next provide additional background, comprising the details of the court's ruling on the County's request.  We then address and reject Golla's arguments challenging that ruling.

#### 1.  Applicable Standard of Review and Legal Principles

¶101   "Whether to grant or deny an injunction is committed to the circuit court's discretion."  ***State v. CGIP Lake Partners, LLP***, 2013 WI App 122, ¶19, 351 Wis. 2d 100, 839 N.W.2d 136; *see also **Goode***, 219 Wis. 2d at 683 (concluding that "WIS. STAT. § 59.69(11), the zoning ordinance enforcement statute, does not

eliminate the traditional equitable power of [the] circuit court"). The exercise of discretion standard of review is well established:

> A court properly exercises its discretion when it logically interprets the facts, applies the proper legal standard, and uses a demonstrated rational process to reach a conclusion a reasonable judge could reach. In addition, when considering a request for injunctive relief, a court erroneously exercises its discretion by: (1) failing to consider and make a record of the factors relevant to its determination; (2) considering clearly irrelevant or improper factors; or (3) clearly giving too much weight to one factor.

*Carlin Lake Ass'n v. Carlin Club Properties, LLC*, 2019 WI App 24, ¶43, 387 Wis. 2d 640, 929 N.W.2d 228 (citation omitted).

¶102 The parties agree that the factors to be considered by the circuit court in exercising its discretion are those set out in *Goode*, 219 Wis. 2d at 684. This court has stated those factors as follows:

> The following factors are relevant to a circuit court's determination of whether it is equitable to enjoin a violation of a county zoning ordinance: (1) the interest of the citizens of the jurisdiction that has established the zoning requirements in enforcing the requirements; (2) the extent of the zoning violation; (3) whether the parties to the action have acted in good faith; (4) whether the violator of the zoning requirements has available any other equitable defenses, such as laches, estoppel or unclean hands; (5) the degree of hardship compliance with the zoning requirements will create; and (6) what role, if any, the government played in contributing to the violation. *See Goode*, 219 Wis. 2d at 684.

*Carlin Lake Ass'n, Inc.*, 387 Wis. 2d 640, ¶48. This list of relevant factors "is not meant to be exhaustive but only to illustrate the importance of the circuit court's consideration of the substantial public interest in enforcing" zoning ordinances. *Goode*, 219 Wis. 2d at 684.

¶103 "Once a violation is established, a circuit court should grant the injunction except, in those rare cases, when it concludes, after examining the totality of the circumstances, there are compelling equitable reasons why the court should deny the request for an injunction." *Id*.

## 2. Additional Background

¶104 After the presentation of testimony and argument at the remedies hearing in February 2021, the circuit court issued an oral ruling granting the County's request for injunctive relief requiring the removal of the second story addition on the home to bring it in compliance. Over fourteen pages of transcript, the court reviewed the facts and considered the relevant factors. The court subsequently entered a written order containing written findings consistent with its oral ruling. In light of Golla's detailed challenges to the court's consideration of the relevant factors, we reproduce the court's written findings in full, as follows:

> 3. The Court makes the following findings based on the standards set forth in *Carlin Lake Ass'n v. Carlin Club Properties, LLC*, 2019 WI App 24, ¶48, 387 Wis. 2d 640, 929 N.W.2d 228:
>
> a. The interest of the citizens of the jurisdiction that has established the zoning requirements in enforcing the requirements: All citizens have an interest in having to follow the same zoning rules as their neighbors. Just because no individual citizen has come forth to complain about [Golla's] vertical expansion of [the] home is of no consequence and not relevant. The idea that [Golla] can just violate a zoning ordinance and only pay a fine but another landowner that desires to vertically expand their residence must comply with the zoning ordinance and obtain a variance weighs in favor of the County's request for an injunction.
>
> b. The extent of the zoning violation: The alleged zoning violation is extensive. This matter was not a minor mistake in measurement such as building six inches over the line. Rather, this case involved the construction of a second

story on a house that the owners should not have been able to build without obtaining a variance.

c. Whether the parties to the action have acted in good faith: Waupaca County acted in good faith. The County expressed an opinion on what their zoning rules and the law were and these opinions have been confirmed by this Court. It is hard for the Court to say that the County did not act in good faith when the Court agrees with the County's position. Any delay in litigation of this matter were not the result of bad faith by either party. It is hard for the Court to say that [Golla] acted in good faith. [Golla was] put on notice time and time again both orally and in writing of the County's position and chose to find somebody out there who agreed with them and relied on that third party to the detriment of their own situation.

d. Whether the violator of the zoning requirements has available any other equitable defenses, such as laches, estoppel or unclean hands: There are no equitable defenses available to [Golla]. Although the County did not take legal action until [Golla's] construction was complete, this does not provide [Golla] any equitable defense. Whether Waupaca County could have filed an injunction action stopping the construction prior to completion is irrelevant and does not create an equitable defense to [Golla].

e. The degree of hardship compliance with the zoning requirements will create: There will be a hardship to [Golla], however, any hardship is unequivocally self-inflicted. If this were a case where the building of the home extended a couple inches wider than it should have and the County was requesting to demolish the home, that would be extreme. However, [Golla] went ahead with a construction project that [she was] told [she] could not do by the [County].

f. What role, if any, the government played in contributing to the violation: The government played no role in contributing to this violation whatsoever.

4. Lastly, the concept of deterrence is important to these kinds of cases. The community must know that if a landowner is put on notice by the County that the landowner's action violates an ordinance, and the landowner proceeds anyway, it cannot be the understanding in the community that the landowner can simply pay a fine and continue with their ordinance-violating conduct. The community must be aware of other consequences beyond

53

just a monetary penalty and be deterred from violating an ordinance.

### 3. Analysis

¶105   Golla argues that the circuit court incorrectly analyzed each of the *Goode* factors and improperly analyzed the additional factor of deterrence. We address Golla's arguments as to each factor in turn.

### a. Public's interest in enforcing zoning requirements

¶106   Golla contends that the circuit court failed to consider her argument that the 1988 variance indicated that the County Board of Adjustment would be required to find that the addition's placement in violation of the side yard setback does not violate the public interest. However, what the Board of Adjustment might find as to the public interest in reviewing a variance application for the 2016 addition is both unknown and irrelevant. It is unknown because Golla never applied for a side yard setback variance or land use permit, and therefore did not give the County any opportunity to consider the public interest as it might relate to a side yard setback variance for the addition. It is irrelevant because the public's interest in enforcing zoning requirements, which a court must consider in reviewing a request for injunctive relief for a zoning violation, *Carlin Lake Ass'n, Inc.*, 387 Wis. 2d 640, ¶48, is not necessarily the same as the "larger public interest" that a board of adjustment must weigh vis-à-vis the other factors relevant to whether unnecessary hardship exists so as to warrant a variance. *See* ¶38 above, citing *Ziervogel*, 269 Wis. 2d 549, ¶¶7, 33 (enumerating the factors relevant to the unnecessary hardship showing). Golla simply does not address the citizens' interest in enforcing the side yard setback and land use permit zoning provisions that apply to all property in the County.

¶107   Golla contends that the circuit court failed to consider her argument as to the importance of the lack of any complaints regarding the addition. However, the court did consider that argument and accorded the absence of citizen complaints no weight. The court explained that no one was given the opportunity to be heard as to the proposed addition precisely because Golla did not institute any proceeding at which the public would have had such an opportunity, such as by applying for a variance or land use permit. *See, e.g.*, GENERAL ZONING ORDINANCE Ch. 34, § 14.04(6) (requiring for a variance a Class 2 notice under WIS. STAT. ch. 985 and mailed notice to property owners within 300 feet of this parcel) (cited by the County in its respondent's brief, without objection by Golla in her reply brief). To the contrary, the court gave significant weight to the public interest in ensuring that all property owners comply with zoning ordinance requirements and that some are not able to purchase their way out of those requirements by paying a forfeiture. *See Bouchard v. Zetley*, 196 Wis. 635, 647, 220 N.W. 209 (1928) ("The public is interested in the enforcement of the zoning ordinances .… Such public rights should not be compromised by private parties.").

¶108   Golla contends that the circuit court failed to consider her argument that the County, by not seeking to enjoin the construction or to "diligently prosecute its case," did not itself deem this matter to be of significant public interest. However, the court did consider the County's failure to seek a restraining order earlier in the process, but gave that fact no weight, explaining that the County had from the start advised Golla of the variance and land use permit requirements and that it was not "the County's responsibility to save [Golla] from poor decisions."

¶109   Golla contends that the circuit court overstated the public's interest in enforcement of the zoning ordinances given the "unique circumstances" present here, comprising a vertical addition to a home that encroached on the side yard

setback pursuant to a prior variance. Golla posits that the public interest is minimal because "so few properties would ever have such a situation arise." However, Golla disregards the broad application of the side yard setback and land use permit provisions to every property regardless of any such "unique circumstances."

### b. The extent of the zoning violation

¶110 Golla contends that the circuit court should have given minimal weight to the encroachment into the side yard setback because it was allowed pursuant to the 1988 variance. However, the court gave great weight to the fact that the encroachment was neither inadvertent nor a matter of inches but was instead an entire addition that Golla "should not have been able to build without obtaining a variance." Golla fails to show that the court's weighing of this factor based on the facts was illogical or irrational. *See **Carlin Lake Ass'n, Inc.***, 387 Wis. 2d 640, ¶43.

### c. Whether the parties have acted in good faith

¶111 Golla contends that, as to whether she acted in good faith, the circuit court ignored her reliance on the statements by the Town Building Inspector and State Representative as to the effect of WIS. STAT. § 59.692 on the County's enforcement of the General Zoning Ordinance side yard setback and land use permit provisions, which conflicted with the information she received from the County. However, the court did consider this fact and found that it weighed against Golla, explaining that she was "put on notice time and time again both orally and in writing of the County's position and chose to find somebody out there who agreed with [her] and relied on that party to the detriment of [her] own situation." The court underscored that Golla relied on those with "a shared opinion" instead of applying for a variance or land use permit, as encouraged by the County, or filing an action in court seeking a declaration of her rights. The court noted that, even in this case,

Golla failed to raise a defense based on § 59.692 until October 2020, "four years into the case," despite her having received the § 59.692-related advice in 2015 or 2016.

¶112   Golla contends that the circuit court ignored the fact that the "addition was constructed consistent with the [Town building permit] and there were no concerns of structural safety." We note that her citations to the record do not establish this fact, and she offers no record support showing that this "fact" was presented to the court for its consideration. More importantly, the Town building permit directed Golla to consult with the County regarding a land use permit, and Golla's pointed failure to comply with this condition was one of the facts supporting the court's remarks as to this factor quoted above. The structural soundness, or lack thereof, of the addition was not the basis for the court's decision.

¶113   Golla contends that the circuit court improperly weighed, as to whether the County acted in good faith, the County's "inaction both before and during this case." However, the court explained why it found no bad faith from the County's failure to do more than it did before filing this enforcement action, namely alerting Golla numerous times that she needed a variance and land use permit before commencing and then continuing with construction. The court contrasted this situation with one in which a county waited until the property owner completed construction and said, "we got you." The court also found that the delays in litigating this action once commenced were not attributable solely to the County, and Golla does not argue that this finding is clearly erroneous.

d. Equitable defenses

¶114   Golla contends that the circuit court erred in finding that she is not entitled to the equitable defense of laches. Golla reiterates her arguments as to the

57

County's asserted inaction before and during this case, and we have already explained why those arguments do not show that the court improperly declined to weigh the County's asserted inaction in her favor.

¶115 Golla contends that the circuit court erred in finding that she is not entitled to the equitable defense of estoppel because the County failed to follow "the razing requirements" in WIS. STAT. § 66.0413. However, this contention is meritless given that § 66.0413 does not apply, as explained by both the circuit court and in this opinion above.

e. The degree of hardship from compliance with the zoning requirements

¶116 Golla contends that the circuit court failed to consider the "fact" that the hardship here is not self-inflicted, given the conflicting information she received from the County on one hand and the Town Building Inspector and State Representative on the other. However, as explained above, the court did consider the underlying facts, and found that the hardship is self-created. The court considered that the County repeatedly informed Golla of the need to apply for and obtain a variance and land use permit, and that Golla relied on conflicting information from others. Based on these facts, the court found that the hardship is self-created, explaining that "the only reason this is a hardship is because [Golla] went and did something that [she was] told [she] couldn't do." Golla does not persuade us that the court's finding is clearly erroneous.

¶117 Golla contends that the circuit court failed to consider the total cost to construct and remove the addition. However, it was the court that requested that Golla provide the cost estimates in preparation for the remedies hearing, and the court did implicitly consider those estimates when it acknowledged that, "There will

58

be a hardship here. No doubt about it." However, based on all of the undisputed facts, as explained above, the court attributed that hardship solely to Golla.

¶118 Golla contends that the circuit court ignored the 1988 variance, which was granted because the "property's unique limitations created an unnecessary hardship." However, beyond making this assertion, Golla does not make a cogent argument explaining how the hardship based on the land, which the Board of Adjustment found warranted the side yard setback variance for the one-story structure in 1988, relates to the hardship resulting from her proceeding with the addition in 2016 without having obtained a variance and land use permit, which is the hardship that the court must consider in deciding whether to order injunctive relief. Accordingly, we do not consider this contention further. *See Wisconsin Conf. Bd. of Trs. of the United Methodist Church, Inc. v. Culver*, 2001 WI 55, ¶38, 243 Wis. 2d 394, 627 N.W.2d 469 (stating that we do not address arguments that are conclusory and insufficiently developed).

¶119 Golla contends that the circuit court "failed to consider *Goode*'s acknowledgment of the unique hardship that setback violation cases present." However, Golla's citation to *Goode*, 219 Wis. 2d at 682, in support of this contention contains no such acknowledgement. Rather, on that page the court cites a Colorado case as "upholding [the] trial court's consideration of equitable principle of relative hardships in [a] setback violation case, where encroachment was done in good faith pursuant to a permit …." *Id.* Golla does not explain how the situation in that case applies here, where she proceeded without a permit and the circuit court found that the facts did not show that she did so in good faith.

59

f. Role the government played in contributing to the violation

¶120  Golla contends that the circuit court ignored certain facts that "establish that the County contributed to, and could have prevented, the outcome of this case." These facts include the County's asserted inaction before and during this lawsuit, the County's failure to comply with the statutory razing procedure, the 1988 variance based on the unnecessary hardship created by the property's unique limitations, and Golla's reliance on statements by the Town Building Inspector and State Representative. As explained above, the court found that none of these facts establish that the County contributed to Golla's violation, and Golla fails to show that the court's findings as to these facts are clearly erroneous or contrary to law.

g. Additional factor: Deterrence

¶121  Golla contends that the circuit court "improperly considered deterrence as a factor to support an injunction." Golla provides no legal authority for the proposition that deterrence is not a proper factor for the court to consider, and the legal authority is to the contrary. *See Goode*, 219 Wis. 2d at 684 (stating that the list of six relevant factors is not exclusive). Moreover, the court here explained why "deterrence is important to these kinds of cases."

¶122  In the alternative, Golla contends that the circuit court gave this factor too much weight, because zoning enforcement is "highly fact intensive and reviewed on a case-by-case basis," thereby diluting any deterrence effect from this particular case. However, this argument disregards the reason why the court gave deterrence significant weight. The court deemed deterrence deserving of weight based on the undisputed facts that Golla proceeded without applying for and obtaining a variance and land use permit, pursuant to provisions that apply to all property in the County, despite the County's repeatedly advising her that she needed

a variance and land use permit. The court gave weight to the deterrence factor so that those facts would not easily repeat themselves: "it cannot be the understanding in the community that the landowner can simply pay a fine and continue with their ordinance-violating conduct."

## h. All factors

¶123 As to all factors, Golla essentially contends that the circuit court should have exercised its discretion differently by weighing the relevant factors differently, and should have imposed forfeitures rather than an injunction requiring removal of the addition to bring the structure into compliance with the General Zoning Ordinance. While the remedy may be harsh, the circuit court acknowledged its severity and articulated the reasons why, applying the proper legal standards to these particular facts, nothing short of removal would address the seriousness of the violation. To repeat, as the court found, Golla ignored her administrative and judicial remedies by failing to apply for and obtain a variance and land use permit, after repeatedly being advised by the County, as well as in the Town building permit she obtained, to do so. As the court reasoned, to require that Golla only pay a forfeiture could send the message that property owners can purchase their way around the General Zoning Ordinance provisions and would compromise enforcement of those provisions. The remedy ordered by the court is squarely within its discretion, and the court's written order, which summarizes its oral ruling, establishes that the court carefully considered the appropriate law and the undisputed facts and made a reasonable decision.

¶124 In sum, based on our review of the record, which includes the circuit court's detailed and comprehensive consideration of the relevant factors, we cannot conclude that the court erroneously exercised its discretion.

**CONCLUSION**

¶125   For the reasons stated, we conclude that the 1988 variance does not exempt Golla from complying with the side yard setback and land use permit provisions in the County General Zoning Ordinance as to the 2016 addition.  We also conclude that the County is not barred by WIS. STAT. § 59.692, which governs the County's shoreland zoning authority, from requiring that Golla comply with the side yard setback and land use permit provisions in the County General Zoning Ordinance as to the addition.  Accordingly, we conclude that the County is entitled to summary judgment on its claims that Golla violated the County General Zoning Ordinance when she constructed an addition to a structure on her shoreland property without having applied for and obtained a side yard setback variance and land use permit, despite being repeatedly advised by the County before and during construction that a variance and land use permit were necessary.  Finally, we conclude that the circuit court had authority to grant the County's request for injunctive relief and that Golla fails to show that the court erroneously exercised its discretion in doing so.  Accordingly, we affirm.

*By the Court.*—Order affirmed.